IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CT-3074-FL

| | | |
|---|---|---|
| HARRY SHAROD JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KENNETH E. LASSITER, TOM | ) | |
| BRICKHOUSE, INA M. HINTON, | ) | |
| RICARDO HARDISON, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on cross motions for summary judgment by defendants and plaintiff, pursuant to Federal Rule of Civil Procedure 56 (DE 40, 41). The motions were briefed, and in this posture, the issues raised are ripe for ruling.   For the following reasons, defendants' motion is granted, and plaintiff's motion is denied.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing a complaint on March 20, 2019, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the Universal Declaration of Human Rights, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq., alleging defendants disallowed plaintiff to possess wooden prayer beads he requires in his religious Islamic practice.   Following an initial period of frivolity review, the court allowed plaintiff to proceed on his claims.

---

[1]     Plaintiff lists "Chaplain Hardison" as a defendant in this action.   However, defendants respond that "Chaplain Hardison's" full name is "Ricardo Hardison."   Accordingly, the court will order the clerk to amend "Chaplain Hardison" to "Ricardo Hardison" on the docket.

Defendants, sued in both their individual and official capacities, are Kenneth E. Lassiter ("Lassiter"), the North Carolina Director of Prisons, Tom Brickhouse ("Brickhouse"), superintendent of Hyde Correctional Institution ("Hyde CI"), Ina M. Hinton ("Hinton"), a member of the inmate grievance resolution board, and Ricardo Hardison ("Hardison"), senior chaplain at Bertie Correctional Institution ("Bertie CI"). Plaintiff seeks punitive damages in the amount of $600,000.00 from each defendant and a change in prison policy to allow all religions to be treated equally.

Following a period of discovery, and in accordance with the court's case management order, plaintiff moved for summary judgment, relying on an incorporated memorandum in support. Defendants responded to plaintiff's motion by filing a cross motion for summary judgment, relying upon a memorandum of law, statement of material facts, and appendix of exhibits thereto, comprising the following: 1) defendant Hardison's declaration; 2) two copies of the North Carolina Department of Corrections ("NCDOC") policies for specific religions, including Islam; 3) two copies of the North Carolina Department of Public Safety ("NCDPS") Prison Policy and Procedures for Religious Services; 4) two copies of defendant Hardison's completed training; 5) two copies of plaintiff's offender information; 6) two copies of NCDPS Prisons Chaplaincy Services Religious Practices Operational Manual for Islam and the Faith Helper Policy ("NCDPS Chaplaincy Manual"); 7) two copies of identical event calendars; 8) two copies of a correspondence from defendant Hinton's to plaintiff; and 9) two copies of grievance procedure documents.[2]

---

[2] Where two copies of the same exhibit are included in defendants' appendix of exhibits, the court will cite only the first copy appearing therein.

2

Plaintiff responded in opposition to defendant's cross motion for summary judgment, relying upon, relying on an appendix comprising the following: 1) references to documents in the record; 2) references to discovery responses; and 3) plaintiff's declaration.[3]

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. Plaintiff was housed at Hyde CI during the time period alleged in the complaint. (See Offender Info. (DE 43-2) at 75). On January 30, 2019, plaintiff requested to receive a set of Islamic prayer beads. (Pl.'s Decl. (DE 48-1) at 1). On or about February 28, 2019, plaintiff's set of wooden prayer beads arrived at Hyde CI. (Id.; Grievance Procedure (DE 43-2) at 89). However, plaintiff was informed he could not have them because they were made of wood instead of plastic, and it was against policy to allow wooden prayer beads. (Pl.'s Decl. (DE 48-1) at 1; Pl.'s Resp. (DE 47) at 2; Grievance Procedure (DE 43-2) at 89–90). Plaintiff requires wooden prayer beads because it "is the close[s]t [he] can get to the clay of Karbala[] (pure earth)." (Pl.'s Mot. Summ. J. (DE 40) at 4).

As senior chaplain at Bertie CI, defendant Hardison was called to advise plaintiff's case manager at Hyde CI. (Hardison Decl. (DE 43-1) ¶ 2). Defendant Hardison informed plaintiff's case manager that

> [t]he Religious Practices Resources Guide and Reference Manual is clear that chaplains should approve all orders for inmate religious property [this applies to all faith groups] and that no wooden beads are allowed. Plastic prayer beads may be kept in one's pocket or locker and used during private time. They are not to exceed 38[] inches long open end to end. Further, they are not to be worn around one's neck.

(Id. ¶ 4; see also Pl. Mot. Summ. J. (DE 40) at 4; Pl. Resp. (DE 47) at 2; NCDOC Religious Policies

---

[3]    Plaintiff did not include copies of the referenced documents.

3

(DE 43-2) at 5; NCDPS Chaplaincy Manual (DE 43-2) at 78–79). Other religions, including American Indian Religion, Asatru, Buddhism, Hinduism, Rastafarian, and Wiccan are allowed to use wooden religious items. (Pl.'s Mot. Summ. J. (DE 40) at 2–3; NCDOC Religious Policies (DE 43-2) at 11, 13, 15, 21, 27, 29).

## COURT'S DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

4

[non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.    Plaintiff's Universal Declaration of Human Rights Claims

The court begins by addressing plaintiff's claims pursuant to the Universal Declaration of Human Rights. "[T]he Universal Declaration of Human Rights is a non-binding declaration that provides no private rights of action." United States v. Chatman, 351 F. App'x 740, 741 (3d Cir. 2009) (citing Sosa v. Alvarez-Machain, 542 U.S. 692, 734 (2004) (explaining the Universal Declaration does not impose legal obligations in federal court)). Accordingly, plaintiff's claims pursuant to the Declaration of Human Rights are dismissed.[4]

---

[4]    Section 1915(e)(2) provides that where the plaintiff proceeds in forma pauperis, the court may dismiss the action "at any time" if it determines the plaintiff has failed to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

5

B.      Defendant's Motion for Summary Judgment (DE 41)

Beginning with plaintiff's RLUIPA claims, RLUIPA provides:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).   "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."   Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion.   See 42 U.S.C. § 2000cc-2(b).   The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."   42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009).   A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, . . . or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand."   Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted); see also Holt v. Hobbs, 135 S. Ct. 853, 862 (2015) (holding prisoner established substantial burden under RLUIPA because prison regulation prohibiting half-inch beard "put petitioner to [the] choice" between punishment and violating his religious beliefs).

6

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Smith, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting Lovelace, 472 F.3d at 198 n. 8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted); Smith, 578 F.3d at 252 (quotations omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[ ] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190); see also Holt, 135 S. Ct. at 866.

Regarding plaintiff's First Amendment claims, the Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is reasonably related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78, 89–91 (1987).

In deciding whether a defendant's actions can be sustained as "reasonably related to legitimate penological interests," the court must consider the following four factors: 1) whether

7

there is a valid, rational connection between the regulation and the legitimate penological interest; 2) whether there are alternative means of exercising the right in question that remain open to prisoners; 3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and 4) whether ready alternatives exist which accommodate the right and satisfy the penological interest.  See Turner, 482 U.S. at 89–90.  Claims pursuant to the First Amendment and RLUIPA are evaluated under the same factors, but First Amendment claims are subject to a less demanding standard of proof.  See Lovelace, 472 F.3d at 199, n.8 ("RLUIPA adopts a 'more searching standard' of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness.") (quoting Madison v. Ritter, 355 F.3d 310, 314–15 n.1 (4th Cir. 2003)).

Defendants contend that plaintiff has failed to demonstrate that their actions constitute a substantial burden on his ability to practice the Islamic faith.  (Def.'s Mem. (DE 44) at 10).  The court agrees that plaintiff has failed to demonstrate his behavior was modified and his religious beliefs were violated by being required to use plastic prayer beads as opposed to wooden.  The only explanation plaintiff provides regarding whether his religious beliefs were compromised is the vague statement that he requires wooden prayer beads because it "is the close[s]t [he] can get to the clay of Karbala[] (pure earth)."  (Pl.'s Mot. Summ. J. (DE 40) at 4).  Plaintiff otherwise fails to offer any explanation.  Plaintiff's arguments instead focus on the fact that other religions are allowed to use wooden religious items.  (See id. at 2–3).  However, such a fact is not relevant to whether plaintiff's religious practice was substantially burdened.  Plaintiff has failed to demonstrate that the deprivation of wooden prayer beads modified his behavior and violated his religious beliefs, and he has failed to establish a substantial burden on his ability to practice Islam. See Krieger v. Brown, 496 F. App'x 322, 326 (4th Cir. 2012) (confirming that plaintiff's failure

to "explain why the absence of the sacred items has an impact on the rituals and violated his beliefs" prevented the district court from evaluating "the degree to which [plaintiff's] religious exercise was impaired"). Accordingly, there is no genuine issue of material fact, and defendants are entitled to judgment as a matter of law.

    3.    Plaintiff's Motion for Summary Judgment (DE 40)

Because the court has determined that, based on facts in the light most favorable to plaintiff, he has failed to establish a genuine issue of material fact precluding summary judgment on his claims, plaintiff's motion for summary judgment must fail. Accordingly, the court denies plaintiff's motion for summary judgment.

**CONCLUSION**

Based on the foregoing, plaintiff's claims pursuant to the Universal Declaration of Human Rights are DISMISSED. Defendants' motion for summary judgment (DE 41) is GRANTED, and plaintiff's motion for summary judgment (DE 40) is DENIED. The clerk is DIRECTED to amend the docket in accordance with footnote one and close this case.

SO ORDERED, this the 10th day of March, 2022.

_Louise W. Flanagan_
LOUISE W. FLANAGAN
United States District Judge
